IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                        Plaintiff,<br><br>          v.<br><br>JOSEPH P. CILLO,<br><br>                     Defendant. | :<br>:<br>:<br>:<br>:     Civil Action No.<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT SEEKING INJUNCTIVE AND OTHER RELIEF

Plaintiff, Securities and Exchange Commission ("Commission"), alleges that:

### OVERVIEW

1.     This matter involves Joseph P. Cillo's repeated violations of a Commission penny-stock bar over the three-year period between December 2007 and December 2010.

2.     In November 2007, through a reverse merger with a penny-stock shell company, Cillo became the CEO and controlling shareholder of eFUEL EFN Corp. ("eFUEL"), a purported web development company then based in Tampa, Florida and listed on the OTC Market Group's "OTC Pink" market tier (formerly the "Pink Sheets") under the symbol "EFUL."

3.     In connection with his conduct while affiliated with eFUEL, Cillo has engaged in various activities related to, and for the purpose of, issuing, trading, and inducing the purchase of eFUEL's stock.

1

4.      Specifically, Cillo (a) offered and/or issued hundreds of millions of shares of eFUEL stock to third-parties as purported payment for debts and services; (b) drafted and approved multiple press releases touting the company's business plan and development prospects (which included Investor Relations contact information); and (c) prepared, signed, and submitted periodic reports to the OTC Markets Group in order to comply with the Pink Sheets' minimal requirements for "adequate current information."

5.      These activities constituted violations of a July 13, 1995 Commission order barring Cillo from participating in the offering of any penny stock (the "Penny Stock Order"). The Commission's penny stock order against Cillo was itself based upon an earlier district court injunction against Cillo for his involvement in a fraudulent securities scheme.

6.      The Commission imposed the Penny Stock Order after finding that it was in the public interest because Cillo had previously been permanently enjoined from aiding and abetting future violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder by the U. S. District Court for the District of Utah, for aiding and abetting a co-defendant corporate president's fraudulent conduct in a court order dated January 3, 1994.

7.      Specifically, as alleged in the district court action, Cillo, while acting as company counsel for Unifirst Corporation ("Unifirst"), aided and abetted the company president's fraud by participating in a merger between the company and a public shell company that resulted in Unifirst's president acquiring a 70% undisclosed controlling interest in the company's stock.

8.      Cillo also assisted the president of Unifirst in preparing Unifirst's Rule 15c2-11 information materials, which failed to disclose that Unifirst's president controlled 70% of the company's stock. Cillo further assisted Unifirst's president by selling a portion of the

2

president's stock to the public through several nominee brokerage accounts by giving written instructions to the company's transfer agent to issue stock in nominee names.

9.     Unless Cillo is enjoined by this Court, Cillo will continue to engage in the acts and practices alleged herein, relative to his conduct involving eFUEL.

10.     By this action, the Commission seeks: (a) permanent injunctive relief to enjoin Cillo from continuing violations of the Penny Stock Order and Section 15(b)(6)(B)(i) of the Exchange Act; (b) an order commanding future compliance with the Penny Stock Order; (c) disgorgement of all ill-gotten gains based upon the conduct alleged herein, together with prejudgment interest; (d) civil fines and/or penalties; and (e) such further relief as the Court deems appropriate.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

12.     Certain of the transactions, acts, practices, and courses of business constituting violations of the Exchange Act occurred in the Middle District of Florida. Cillo resides in the Middle District of Florida.

## DEFENDANT

13.     Cillo, age 59, is a resident of Dade City, Florida. Between November 2007 and January 2011, Cillo was the CEO and controlling shareholder of eFUEL, a penny stock company.

## FACTS

A.     **The Commission's Prior Litigation Against Cillo and Related Penny-Stock Bar**

14.     The Commission filed a civil injunctive action against Cillo on March 11, 1991 in SEC v. Sterns, et al., No. 2:91-cv-01303-ER (C.D. Cal.).  In its complaint, the Commission alleged, among other things, that from approximately January 1986 through March 1989, Cillo, together with others named in the complaint, engaged in a fraudulent scheme to unlawfully distribute the unregistered securities of seven dormant shell corporations.

15.     Without admitting or denying the allegations of the Commission's complaint, Cillo and others consented to the entry of Final Judgments of Permanent Injunction enjoining further violations, or aiding and abetting violations further violations, of Sections 5 and 17(a) of the Securities Act, Sections 10(b) and 15(a) of the Exchange Act, and Rule 10b-5.

16.     The Commission filed a civil injunctive action against Cillo on September 28, 1993 in SEC v. Unifirst Corporation, et al., No. 93-C-867J (D. Utah).   The complaint alleged in relevant part that Cillo, as corporate counsel for a privately held company, had aided and abetting the company's president in a scheme to acquire an undisclosed interest in the stock through an unregistered offering.

17.     An attorney formerly licensed and practicing in Florida, Cillo resigned from The Florida Bar in 1993 in lieu of disciplinary proceedings.

18.     On January 3, 1994, the U. S. District Court for the District of Utah in the Unifirst matter permanently enjoined Cillo from future violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Exchange Act and Rule 10b-5.

4

19.     On April 17, 1995, the Commission instituted administrative proceedings based on the entry of the permanent injunction in Unifirst. After the Commission instituted the administrative proceedings, Cillo submitted an Offer of Settlement which the Commission accepted. Specifically, Cillo agreed to be and was "barred from participating in an offering of any penny stock." In the Matter of Joseph P. Cillo, Admin. Proc. File No. 3-8670 (June 13, 1995).

**B.      Background on eFUEL**

20.     In November 2007, through a reverse merger between EFUEL Network, Inc., a Florida corporation controlled by Cillo, and Preservations Sciences, Inc. ("Preservation Sciences"), a penny-stock shell company, Cillo installed himself as the CEO and controlling shareholder of Preservation Sciences's renamed successor entity, eFUEL, a purported web development company based in Tampa, Florida and listed on the Pink Sheets.

21.     eFUEL had a handful of employees (with responsibilities ranging from information technology to accounting), several of whom doubled as officers and directors of the company.

22.     During the relevant period, eFUEL's shares never traded above $1.00 per share. Further between November 2007 and January 2011, eFUEL had negligible assets and virtually no revenue.

23.     According to evidence including unaudited financial reports that eFUEL filed with the OTC Market Group, the company generated no revenues in 2009 or 2010. In fact, eFUEL finished 2009 with $7 of net assets, and finished 2010 with no net assets.

**C.     As CEO of eFUEL, Cillo Engaged In Activities Related To, And For the Purpose Of, Issuing, Trading, And Inducing the Purchase of the Company's Shares**

24.     From December 2007 to December 2010, Cillo engaged in various activities directly related to issuing, trading, and inducing the purchase of eFUEL stock.

25.     Issuance of eFUEL stock:    As CEO, Cillo signed at least 80 "issuance resolutions" collectively authorizing eFUEL's transfer agent to increase eFUEL's outstanding shares by hundreds of millions of shares, and instructing the transfer agent to issue those shares to various third parties.

26.     These issuances by Cillo were made as payment for services (e.g., setting up a company website) or related debts.

27.     The issuance resolutions, which included both restricted and free trading stock, were approved and signed by Cillo "[i]n lieu of a meeting of the board of directors[.]"

28.     At least some of these issuances were made as part of an offering of eFUEL stock pursuant to a June 2009 Regulation D filing made by eFUEL (and signed by Cillo).

29.     Drafting and approving eFUEL press releases:    During the relevant period, eFUEL issued at least 50 press releases touting the company's business plan, development prospects, and growth potential.

30.     Various press releases including claims that the company had developed a "BackgroundChecker app" available on iTunes, had expanded its reach into "the $400 billion government market sector," and had entered into marketing agreements to broadcast 30-second commercials.

31.     Cillo personally reviewed and drafted some of eFUEL's press releases, which were posted on eFUEL's website and distributed via newswire.

32.     Submission of periodic disclosure statements to the OTC Markets Group:  During

the relevant period, eFUEL filed periodic reports with the OTC Markets Group in order to

comply with the Pink Sheets' minimal requirements for "adequate current information."

33.     Companies listed on the Pink Sheets are categorized into three tiers based on the

amount and timeliness of their financial disclosures.  By submitting periodic reports containing

financial and related information, Pink Sheet companies can avoid the Pink Sheets' "No

Information" tier and the "STOP" designation discouraging trading in their stock.

34.     Cillo signed and assisted in the preparation of these reports, and he understood

that "it was necessary to provide" such reports to the Pink Sheets.  Cillo helped to prepare the

documents.

**D.     Cillo Sells eFUEL and Resigns From The Company's Board of Directors**

35.     On or about January 19, 2011, Cillo agreed to sell a controlling interest in eFUEL

to Euro-American Finance Network Inc. ("EAFN"), a transaction which apparently closed in or

around March 2011.

36.     Cillo received at least $20,000 for his shares and may have received up to $92,000

for his company stock.  In fact, documents submitted to the OTC Markets Group indicate that

Cillo may have received $92,000 for his controlling interest in eFUEL.

37.     As of April 8, 2011, eFUEL has changed addresses, removed officers and

directors (including Cillo), and replaced those officers and directors with persons associated with

EAFN.

38.     Section 15(b)(6)(A) of the Exchange Act authorizes the Commission to prohibit

persons from participating in an offering of penny stock.  The statute defines "person

participating in an offering of penny stock" to include any person "who engages in activities with

a[n] issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock." As discussed, on June 13, 1995, the Commission entered an order that "barred [Cillo] from participating in an offering of any penny stock." In the Matter of Joseph P. Cillo, Admin. Proc. File No. 3-8670 (June 13, 1995).

39.     At all relevant times, eFUEL's common stock qualified as a penny stock because it was an equity security that did not meet any of the exceptions from the definition of penny stock contained in Section 3(a)(51) of the Exchange Act and Rule 3a51-1 thereunder.

40.     Among other things, eFUEL's common stock, quoted on the Pink Sheets, did not trade above a dollar per share during the relevant period and was not (1) registered on a national securities exchange or authorized for quotation on NASDAQ; (2) was not an NMS stock as defined in 17 CFR § 242.600(b)(47); and, (3) was not issued by a registered investment company. In addition, eFUEL had virtually no demonstrable assets or revenue for at least the last three years.

41.     Cillo violated his penny-stock bar because he engaged in activities with eFUEL for purposes of issuing, trading, and inducing others to purchase eFUEL's penny stock. *See* Exchange Act, Section 15(b)(6)(C) (defining "participating in an offering of penny stock" to include someone who "engages in activities with a[n] issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock"). Further, Cillo issued and/or offered hundreds of millions of shares of eFUEL stock to third-parties, drafted and approved multiple press releases touting the company's business plan and development prospects, and prepared, signed, and submitted periodic disclosure statements to the OTC Markets Group.

8

## CLAIM FOR RELIEF

### Violation of a Commission Order
### and Section 15(b)(6)(B)(i) of the
### Exchange Act, 15 U.S.C. § 78o(6)(B)

42.     Paragraphs 1 through 41 are realleged and incorporated herein by reference.

43.     From November 2007 through at least December 2010, Cillo participated in offerings of penny stock in violation of the Commission's Penny Stock Order.

44.     By reason of the foregoing, Cillo directly violated, and unless immediately enjoined, will continue to violate the Order of the Commission Making Findings And Imposing Remedial Sanctions dated June 13, 1995, In the Matter of Joseph P. Cillo, Admin. Proc. File No. 3-8670, which bars him from participating in any offering of penny stock. By violating the Penny Stock Order, Cillo has and will continue to violate Section 15(b)(6)(B)(i) of the Exchange Act, 15 U.S.C. § 78o(6)(B).

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

1.     Issue findings of fact and conclusions of law that Cillo violated the Commission's Order and Section 15(b)(6)(B)(i) of the Exchange Act as alleged above.

2.     Enter a final judgment:

(a) permanently enjoining Cillo from, directly or indirectly, continuing violations of the Commission's Order and Section 15(b)(6)(B)(i) of the Exchange Act;

(b) ordering future compliance with Commission orders;

(c) ordering disgorgement of all ill-gotten gains based upon Cillo's conduct alleged herein, together with prejudgment interest; and

(d) ordering Cillo to pay civil fines and/or penalties under Section 21(d)(3) of the Exchange Act,

15 U.S.C. § 78u(d)(3).

3.      Retain jurisdiction over this action in accordance with the principles of equity and

the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders

and decrees that may be entered, or to entertain any suitable application or motion for additional

relief within the jurisdiction of this Court.

4.      Grant such other and further relief as this Court may determine to be just and

necessary.

Dated:  October 13, 2011

                                        Respectfully submitted,

                                        Edward G. Sullivan
                                        Senior Trial Counsel
                                        Florida Bar No. 0473618
                                        Securities and Exchange Commission
                                        3475 Lenox Road, NE Suite 1000
                                        Atlanta, GA 30326
                                        (404) 842-7612
                                        sullivane@sec.gov


Counsel for Plaintiff
SECURITIES AND EXCHANGE COMMISSION